UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK L. MOHAN,
    *Plaintiff*,

v.                                            No. 3:19-cv-00663 (JAM)

UBS FINANCIAL SERVICES INC. *et al.*,
    *Defendants*.

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Mark Mohan has been employed by defendant UBS Financial Services, Inc. ("UBSFS") as a financial advisor since 2011. He filed this lawsuit *pro se* against UBSFS and UBS AG, claiming that UBSFS retaliated against him because of his protected whistleblowing and disability. Defendants now move to dismiss Mohan's claims or alternatively to stay this action, and to dismiss UBS AG. For the reasons set forth below, I will grant defendants' motion to dismiss without prejudice on the ground that Mohan has not alleged facts that plausibly entitle him to relief for any of his claims.

**BACKGROUND**

Defendant UBSFS is a subsidiary of defendant UBS AG, a publicly traded company, and has employed Mohan as a portfolio management program advisor since 2011. Doc. #30-1 at 1-2 (¶¶ 1-2). In his capacity as a financial advisor, Mohan manages both discretionary and non-discretionary investment accounts. *Id.* at 1 (¶ 1). Mohan suffers from chronic physical impairments, including severe lumbar disc degeneration, which substantially limit his major life activities. *Id.* at 7 (¶ 29). Mohan remains employed by UBSFS. *Ibid.* (¶ 28).

From 2015 to 2017, Mohan submitted various complaints regarding UBSFS's alleged violations of securities laws. From 2015 to 2016, Mohan sent 30 emails to UBSFS's compliance

1

department, communicating his belief that UBSFS lacked sufficient internal controls and engaged in possible breaches of its fiduciary duties. *Id.* at 4 (¶ 12). During the same period, Mohan also filed complaints with the U.S. Securities and Exchange Commission ("SEC"), alleging that UBSFS violated various securities regulations. *Ibid.* (¶ 13). Afterwards, UBSFS began to interfere with Mohan's business development activities, and in December 2016, while Mohan was on disability leave, advised him that he was "at risk of termination." *Id.* at 5 (¶¶ 16-17).

In January 2017, Mohan sent a letter to UBSFS's managing director, head of employment, and legal personnel alleging that UBSFS violated various securities statutes and regulations. *Ibid.* (¶ 18). In particular, Mohan claimed that UBSFS continued to list certain stocks as a "buy" on the system used to advise retail clients, when UBSFS downgraded and liquidated the same stocks for its institutional clients and proprietary accounts. *Ibid.*

In June 2017, Mohan and his counsel had a three-hour conference call with UBSFS's executive director and senior counsel, Karen Konigsberg, detailing the serious financial harms incurred by Mohan's clients owing to UBSFS's alleged violations of SEC regulations. *Id.* at 10 (¶ 40). Following these complaints, UBSFS's in-house counsel initiated an investigation but repeatedly failed to communicate with Mohan's counsel, including his counsel's request for Mohan's short-term disability benefit base calculations for formulation of a settlement demand. *Id.* at 5-7 (¶¶ 19-27).

In August 2017, Mohan's counsel emailed Konigsberg, reminding her that UBSFS still had not substantively responded to Mohan's complaints of possible securities law violations and that Mohan, out of concern for his clients, was considering informing them of the violations. *Id.* at 12-14 (¶ 49). Later that month, Mohan instructed his wife and business partner to draft a letter

regarding UBSFS's violations of securities laws to their clients. *Id.* at 14 (¶ 50). But Mohan's wife refused and immediately requested a divorce. *Ibid.*

In the meantime in April 2016, Mohan submitted to his supervisor, Andrew Babiak, a doctor's note recommending he take short-term disability leave due to his lumbar disc issues. *Id.* at 7-8 (¶¶ 29, 31). Babiak told Mohan he "would not be able to go out on short-term disability because of compensation related issues," leaving Mohan feeling "discouraged." *Id.* at 8 (¶¶ 32-33). But Mohan's leave was ultimately approved in July 2016, with a retroactive start date of June 2016. *Id.* at 6 (¶ 22), 8 (¶ 34).

While Mohan was on leave in April 2017, he heard reports that his clients had received letters from UBSFS stating that he was "no longer with the firm." *Id.* at 7 (¶ 28), 14 (¶ 52); Doc. #41-4 at 6. And although Mohan's wife had enrolled him in her health care plan in November 2017 and despite his repeated requests that UBSFS stop withdrawing insurance premiums from his checking account, Mohan still had premiums withdrawn from his account from January to March 2018, causing him to incur overdraft fees. Doc. #30-1 at 8-10 (¶¶ 35-38).

In July 2017, Mohan filed complaints with the Department of Labor ("DOL"), the Equal Employment Opportunity Commission ("EEOC"), and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging discrimination and retaliation. *Id.* at 18 (¶ 64). The DOL held a three-day hearing before an Administrative Law Judge ("ALJ") in January and February 2019. Doc. #41-1 at 2. During the hearing, Mohan gave extensive testimony and cross-examined Konigsberg and UBS's Director of HR Benefits, Charles Seputis. Doc. #30-1 at 9-10 (¶¶ 37-38), 15-18 (¶¶ 56-63). On the third day of the hearing, Mohan presented six law review articles as authorities, but came to the realization that the ALJ was going to set "'an unreasonably high burden'" and "had little knowledge of securities laws." Doc. #41-1 at 3. For

these reasons, Mohan felt that he would not receive a full and fair hearing from the ALJ, and so he filed this federal court action in May 2019, seeking *de novo* review from this Court. *Id.* at 4.

Mohan's third amended complaint alleges six claims: (1) that UBSFS retaliated against him in violation of Section 806 of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; (2) that UBSFS retaliated against him in violation of Connecticut's free-speech statute for private sector workers, Conn. Gen. Stat. § 31-51q; (3) that UBSFS retaliated against him in violation of Connecticut's whistleblower statute, Conn. Gen. Stat. § 31-51m; (4) that UBSFS constructively discharged him in violation of Connecticut public policy; (5) that UBSFS retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203; and (6) that UBSFS committed wage theft in violation of Conn. Gen. Stat. § 31-71e. *See* Doc. #30-1 at 19-26.[1] Mohan seeks compensatory and punitive damages. *Id.* at 26-27.

## DISCUSSION

The standard that governs a motion to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). Moreover, the plausibility standard means that a complaint will fail if it alleges facts that establish nothing more than that a defendant engaged in conduct that is equally consistent with lawful acts as it is with unlawful

---

[1] The complaint also sporadically mentions the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Doc. #30-1 at 2-4 (¶¶ 5, 8), 22 (¶ 86), 26. Defendants do not address any potential FMLA or CFEPA claims, alleging the complaint as pled failed to provide them with adequate notice under Fed. R. Civ. P. 8 and 10. Doc. #39 at 23-24 n.11. Notwithstanding those arguments, I find that Mohan abandoned any such claims by failing to mention them in his otherwise thorough response to the motion. Doc. #41; *see Turner v. Sidorowicz*, 2016 WL 3938344, at *4 (S.D.N.Y. 2016) ("This result [that Plaintiff abandoned his claim] is warranted regardless of Plaintiff's *pro se* status, as Plaintiff has shown that he is capable of opposing motions, submitting evidence, and communicating issues with the Court."). That his original complaint expressly listed FMLA and CFEPA claims under their own count further evinces an intent to abandon any such claims. Doc. #1 at 9.

acts. *See Iqbal*, 556 U.S. at 678-80; *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

It is also well established that "*pro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013). Further, a court may consider any documents incorporated by reference in or integral to the complaint. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).

I will address each of Mohan's claims below. Rather than discussing these claims in the order in which Mohan has alleged them in his complaint, I will first address the constructive discharge and wage withholding claims before turning to the retaliation claims.

### *Constructive discharge*

"[A]n employee cannot bring a constructive-discharge claim until he is constructively *discharged*," which requires that he "actually resigned." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016); *see also Green v. Town of E. Haven*, -- F.3d --, 2020 WL 1146687, at *8 (2d Cir. 2020) (constructive discharge requires that an employee was forced to resign); *Brittell v. Dep't of Correction*, 717 A.2d 1254, 1270 (Conn. 1998) (same).

Mohan alleged in his complaint that he is still employed by UBSFS. Doc. #30-1 at 7 (¶ 28). But in his opposition to defendants' motion raising this point, he confusingly states that he "has not resigned" and "never 'resigned,'" yet "is no longer employed by the Defendant." Doc. #41 at 5. To the extent Mohan is attempting now to "amend" the allegation from his already thrice-amended complaint, I will disregard it. *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts

the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true.") (cleaned up), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

More likely, Mohan appears to confuse "unemployment" with a self-imposed exile from work due to his reluctance to face his estranged wife, Doc. #41-1 at 9; his fear of losing his clients if he were to return and inform them of defendants' securities-law violations, *ibid.*; his inability to work due to the lapse of his broker's license, *ibid.*; his inability to work due to his disability, *id.* at 18; and/or his belief that UBSFS has failed to take his work-related concerns seriously, *id.* at 29-31. In any case, he has failed to plausibly allege that he was discharged, constructively or otherwise. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) ("indefinite medical leave" is not a discharge).

Mohan has not alleged facts to plausibly establish that he has been discharged. Accordingly, I will dismiss Mohan's constructive discharge claim as alleged in Count Four.

### *Wage withholding*

Section 31-71e of the Connecticut General Statutes applies "[w]hen any employer fails to pay an employee wages[.]" To state a *prima facie* claim of wage theft under section 31-71e, a plaintiff-employee must show, among other things, that (1) "the amount sought to be recovered [qualifies] as a 'wage' under Conn. Gen. Stat. § 31-71a(3)," and (2) he is "entitled to monies that were withheld wrongfully by the defendant employer." *Dalamagas v. Leonidas*, 2017 WL 1086323, at *3 (D. Conn. 2017) (cleaned up). A wage is "compensation for labor or services rendered by an employee[.]" Conn. Gen. Stat. § 31-71a(3).

There is no plausible showing that the alleged insurance premium withdrawals affected any of Mohan's wages. He alleged at his DOL hearing that he "had no income" as of October 2017, Doc. #40-3 at 12, and his sole source of income had been his disability benefits, *id.* at 19.

Conversely, Mohan does not allege that any of the little funds he had in that checking account were from wages he had earned before taking a disability leave in summer 2016. Accordingly, when premiums were withdrawn from Mohan's checking account in 2018, it is implausible they would have affected any compensation that he had received for services rendered to defendants.

More fundamentally, it is not clear how affirmatively withdrawing funds from a checking account amounts to a failure to pay wages or a withholding of wages such that the act would fall within the scope of the statute. *See Butler v. Hartford Tech. Inst., Inc.*, 704 A.2d 222, 227 (Conn. 1997) (noting that Conn. Gen. Stat. § 31-71e is "a remedial statute for the collection of wages that provides penalties in order to deter employers *from deferring wage payments* once they have accrued") (emphasis added) (cleaned up); *see also Dalamagas*, 2017 WL 1086323, at *3 (dismissing claim under section 31-71 where plaintiff "has failed to allege facts sufficient to state a claim that 'his annual expenses which were deducted in full from an earlier paycheck' are covered under the definitions of either 'wage' or 'fringe benefits'").

Mohan has not alleged facts to plausibly establish that any of the premium withdrawals amounted to withholding of wages as defined under section 31-71. Accordingly, I will dismiss Mohan's claim for failure to pay wages as alleged in Count Six.

### *SOX retaliation*

Section 806 of the Sarbanes-Oxley Act was intended "to combat . . . a corporate culture, supported by law, that discourages employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." *Bechtel v. Admin. Review Bd., U.S. Dep't of Labor*, 710 F.3d 443, 446 (2d Cir. 2013) (internal quotations omitted). It provides that employers may not "discharge, demote, suspend, threaten, harass, or in any other

manner discriminate against an employee in the terms and conditions of employment because of any [protected whistleblowing]." 18 U.S.C § 1514A(a).

Thus, to state a *prima facie* claim of SOX retaliation, a plaintiff-employee must show, among other things, that he suffered an "unfavorable personnel action." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219 (2d Cir. 2014). The action must be "harmful enough that it well might have dissuaded a reasonable worker from engaging in statutorily protected whistleblowing." *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 260 (5th Cir. 2014) (*per curiam*) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Econn v. Barclays Bank PLC*, 2010 WL 9008868, at *8 (S.D.N.Y. 2010) (same).

Mohan alleges five unfavorable actions defendants took against him in retaliation for his securities-related whistleblowing: (1) informing him in December 2016 that he was "at risk of termination"; (2) notifying his clients in April 2017 that he was "no longer with the firm"; (3) inadequately investigating his allegations of violations of securities laws; (4) refusing to provide information to his counsel so that he could formulate a settlement demand; and (5) constructively discharging him in October 2017. Doc. #39 at 13; Doc. #41-1 at 5. Because I have already found it implausible that Mohan was constructively discharged, I address only the first four actions.

First, I do not agree with defendants' contention that threats to terminate employment are not actionable under section 806 unless they ripen into concrete action. *See Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 148 (2d Cir. 2014); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2014). Still, I agree with their argument that the form letter at issue here—which simply advised Mohan that he was approaching the end of his short-term disability leave allowance, that UBSFS cannot keep his position open indefinitely, and that

8

UBSFS within the next six months may decide to terminate him after assessing his ability to return to work, Doc. #40-5 at 2—renders implausible Mohan's allegation that he was threatened with termination. *Cf. Pierre v. Napolitano*, 958 F. Supp. 2d 461, 476 (S.D.N.Y. 2013) (informing employee of "implications of his extended leave of absence" is not "threatening").

Second, even if UBSFS informed Mohan's clients while he was on medical leave that he was "no longer with the firm," that is not a plausible unfavorable personnel action. The action is equally consistent with a perfectly innocent explanation, one proffered by Mohan's supervisor at his DOL hearing: that any notice Mohan's clients received would have been a stock notice that a new financial adviser was assigned to their accounts. Doc. #40-3 at 34-35.

And even if there was some insidious motive behind the action, it is not clear how Mohan suffered from it in his employment. Had he returned to UBSFS and found he would be servicing fewer or less valuable accounts, he might have had a claim. But Mohan does not allege that; he was servicing the same number of accounts shortly before and after his clients were noticed: none at all. *See McGrath v. Thomson Reuters*, 2012 WL 2119112, at *12 (S.D.N.Y. 2012) ("Reassignment of the plaintiff's clients while he was on medical leave . . . was not an adverse employment action"), *report and recommendation adopted*, 2012 WL 2122325 (S.D.N.Y. 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013); *Torres-Alman v. Verizon Wireless Puerto Rico, Inc.*, 522 F. Supp. 2d 367, 395-96 (D.P.R. 2007) (no reasonable jury could find retaliation where plaintiff's clients were only reassigned when he was on disability leave).

Third, failing to investigate an employee's complaint of misconduct is not actionable retaliation absent circumstances not present here. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721-22 (2d Cir. 2010) ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint," unless

9

somehow "the failure [to investigate] is in retaliation for some separate, protected act by the plaintiff."); *see also Volpe* v. *Conn. Dep't of Mental Health & Addiction Servs.*, 88 F. Supp. 3d 67, 75 (D. Conn. 2015) (collecting cases).

Nor has Mohan shown he was entitled to the fruits of any internal investigation into his allegations by UBSFS. *See Flynn v. New York State Div. of Parole*, 620 F. Supp. 2d 463, 488 (S.D.N.Y. 2009) (noting that "withholding an investigative report" is not "a materially adverse change in the terms and conditions of employment"). And even assuming defendants' "refusal to address his substantial belief of serious violations of [SEC] regulations" led to Mohan's divorce, Doc. #30-1 at 11-12 (¶ 48), it is not clear how that negative impact on his personal life affected him in his employment. *Cf. Allovio* v. *Holder*, 923 F. Supp. 2d 151, 158 (D.D.C. 2013) ("While [plaintiff] . . . believes that the position changes contributed to his divorce, . . . such unfortunate circumstances do not rise to the level of a materially adverse employment action affecting the terms, conditions, or privileges of employment").

Fourth, it was well within the rights of UBSFS's counsel to refuse to provide Mohan's counsel his short-term disability benefit base in order to facilitate formulation of a settlement demand. Counsel took a "[r]easonable defensive measure[]" in clear anticipation of litigation, and did so in a way that did not affect Mohan's "work, working conditions, or compensation." *United States* v. *N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996); *see also Adams v. Northstar Location Servs., LLC*, 2010 WL 3911415, at *3 n.2 (W.D.N.Y. 2010) ("denial of plaintiff's access to payroll records" was not adverse employment action because it "did not effect a materially adverse change in the terms and conditions of plaintiff's employment").

Mohan has not plausibly alleged an unfavorable personnel action in retaliation for his securities-related whistleblowing. Accordingly, I will dismiss Mohan's claim for SOX retaliation as alleged Count One.

*ADA retaliation*

To state a *prima facie* claim of ADA retaliation, a plaintiff-employee must show that (1) he engaged in activity protected by the ADA, (2) his employer was aware of the protected activity, (3) his employer took an adverse employment action against him, and (4) there was a causal connection between the adverse action and the protected activity. *See Hazelwood v. Highland Hosp.*, 763 F. App'x 60, 62 (2d Cir. 2019). The adverse employment action must be such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. App'x. 123, 128 (2d Cir. 2019) (citing *Burlington N.*, 548 U.S. at 68).

Mohan alleges he engaged in ADA-protected activity when he requested a short-term disability leave in April 2016 and when he filed complaints with the EEOC and CHRO in July 2017. Doc. #30-1 at 24 (¶ 98). He alleges defendants retaliated against him for these activities (1) when Babiak "discouraged" him from taking a medical leave in April 2016, *id.* at 8 (¶¶ 31-33); (2) by deducting health insurance premiums from his checking account from January to March 2018 after Mohan alerted them he was on a separate plan, *id.* at 8-9 (¶¶ 35-37); (3) by refusing to provide his counsel with his disability benefit base calculations, *id.* at 10 (¶ 42); and (4) by constructively discharging him, *id.* at 25 (¶ 100). Because I have already found it implausible that the last two actions were adverse employment actions, I address only the first two.

11

First, Mohan's bare assertion that he was "discouraged" by Babiak's comment, without more, is a conclusory statement that is made even less plausible by Mohan's very next allegation that his request to take a medical leave was *approved* in July 2016. Doc. #30-1 at 8 (¶ 34). It is not clear what changed between April and July 2016 that made Mohan decide to continue to pursue his leave request, or that resolved the "compensation related issues" in his favor. *Cf. Randazzo v. CH2M Hill, Inc.*, 2014 WL 4697131, at *6 (D. Colo. 2014) (dismissing FMLA interference claim where plaintiff conclusorily asserted she was "discouraged" by supervisor suggesting she first try switching offices and working remotely in response to her leave request, and because "[a] reasonable employee . . . seeking to make a formal request for FMLA leave after having been 'discouraged' from doing so by his or her supervisor would logically look to the company's Human Resources Department for such information").

Second, the only causal connection between the premium withdrawals and Mohan's alleged protected activity is temporal proximity. Six months stood between the filing of his EEOC and CHRO complaints and the withdrawals; eighteen months stood between his commencement of disability leave and the withdrawals. Although six months is not necessarily too long to establish a causal connection using temporal proximity, *see Rasmy v. Marriott Int'l, Inc.*, -- F.3d --, 2020 WL 1069441, at *8 & n.59 (2d Cir. 2020), it is rather tenuous, *see Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014) (collecting cases).

Further, Mohan incorporates by reference testimony and emails indicating there was only one withdrawal in January 2018, and it appears that this withdrawal was the product of Mohan's failure to waive medical coverage during the company's open enrollment period, whether because he could not do so or thought he could not access his online employee benefits portal while he was on leave. In any event, defendants retroactively waived the coverage once they

were notified, and defendants applied the balance to premiums Mohan owed for his other, non-medical benefits from January to March. Doc. #40-3 at 41-42; Docs. #40-25–#40-29. Whether the withdrawal was the product of Mohan's mistake or the mistake of defendants, he has not alleged facts to plausibly show that it was more than a mistake but in fact retaliation.

Mohan has not alleged facts to plausibly establish that he suffered retaliation because of his ADA-protected activity. Accordingly, I will dismiss Mohan's ADA retaliation claim as alleged in Count Five.

### *Free-speech and whistleblower retaliation*

To state a claim of free-speech retaliation under Conn. Gen. Stat. § 31-51q, a plaintiff-employee must show that he was, among other things, "discharged or disciplined." *Schumann v. Dianon Sys., Inc.*, 43 A.3d 111, 121 (Conn. 2012). Similarly, to state a claim of whistleblower retaliation under Conn. Gen. Stat. § 31-51m, a plaintiff-employee must show that he was "discharged, disciplined, or otherwise penalized." *Arnone v. Enfield*, 79 Conn. App. 501, 507 (2003). "Discipline" means "chastisement imposed as a penance or as a penalty, or punishment intended to correct or instruct, especially a sanction or penalty imposed after an official finding of misconduct." *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 61 (2d Cir. 2010) (discussing section 31-51q) (cleaned up); *see also Browne v. State Dep't of Correction*, 2017 WL 5243854, at *3 (Conn. Super. Ct. 2017) (Ecker, J.) (similarly defining "discipline" under section 31-51q). "Otherwise penalized" means "action(s) by [an] employer which results in the loss of a position, a loss of wages, and/or a loss of employee benefits." *Urban v. Comm'r of Children & Families*, 2001 WL 577133, at *10 (Conn. Super. Ct. 2001) (discussing section 31-51m) (cleaned up). The adverse actions protected against by both statutes are more restrictive in scope than their federal

13

analogues. *See Bombalicki v. Pastore*, 2000 WL 726839, at *5 (Conn. Super. Ct. 2000) (Blue, J.).

The only specific conduct Mohan alleges was protected under section 31-51m was his filing of a discrimination complaint with the CHRO in July 2017. Doc. #30-1 at 22 (¶ 85). He alleges the following was protected under section 31-51q: (1) lodging internal complaints of securities-law violations, (2) filing a DOL complaint in July 2017 regarding those violations, (3) subsequently providing additional information to the DOL, and (4) filing the instant lawsuit in May 2019. *Id.* at 20-21 (¶ 77). To satisfy the injury element of both claims, Mohan appears to rely on the adverse actions that form the basis of his SOX and ADA retaliation claims.

I have already found that Mohan was not discharged and did not lose wages as a result of the insurance premium withdrawals. Because he does not allege any other "loss of a position, a loss of wages, and/or a loss of employee benefits," *Urban*, 2001 WL 577133, at *10, he has not plausibly alleged that he was "otherwise penalized."

For substantially the reasons I found Mohan has not suffered an adverse employment action in the SOX and ADA contexts, none of the adverse actions Mohan has alleged defendants took against him plausibly constitute "affirmative[] punish[ment] or chastise[ment]" (*i.e.*, discipline). *Avedisian*, 387 F. App'x at 61. Informing Mohan that he would not be able to go on disability leave and that he may eventually be terminated for too long an absence, refusing to provide him with disability benefit base calculations and to satisfactorily address the alleged securities-law violations, and notifying his clients while he was on leave that he was not with the firm, did not alter the status quo. Mohan was left with the same amount of information and in the same position of being employed but unable to work after each adverse action as he was before

14

it. *Cf. ibid.* To the extent the insurance premium withdrawals constituted affirmative action, Mohan has not plausibly alleged that these withdrawals were intended to punish or chastise him.

Mohan has not alleged facts to plausibly show that he was discharged, disciplined, or otherwise penalized. Accordingly, I will dismiss his state statutory claims for retaliation as alleged in Counts Two and Three.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss (Doc. #38) without prejudice. In light of my conclusion that Mohan has not alleged plausible grounds for relief, there is no need to consider defendants' alternative grounds for dismissal. The Clerk of Court shall close this case, subject to re-opening in the event that Mohan elects to file an amended complaint that is sufficient to overcome the deficiencies identified in this ruling.

It is so ordered.

Dated at New Haven this 17th day of March 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge